IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-347-FL

GREGORY BLAKE HALEY,   )
          )
    Plaintiff,    )
          )
  v.        )
          )
TOWN OF WAKE FOREST, ERIC )     ORDER
KERAVUORI, MITZI FRANKLIN, )
VIRGINIA JONES, MARK WILLIAMS, )
and ROE O'DONNELL,   )
          )
    Defendants.   )

This matter is before the court on plaintiff's motion for partial summary judgment (DE 51) and defendants' motion for summary judgment (DE 54), both brought pursuant to Federal Rule of Civil Procedure 56. The motions have been fully briefed, and the issues raised are ripe for ruling. For reasons noted, plaintiff's motion for partial summary judgment is denied, and defendants' motion for summary judgment is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this action by filing complaint on June 8, 2016, seeking judgment against defendants Town of Wake Forest ("Town"), Eric Keravuori ("Keravuori"), Mitzi Franklin ("Franklin"), Virginia Jones ("Jones"), Mark Williams ("Williams"), and Roe O'Donnell ("O'Donnell) (collectively, "defendants") asserting violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq.

After the court entered case management order on September 28, 2016, providing for

discovery to close May 15, 2017, defendants filed motion to consolidate cases, seeking to consolidate the present case with <u>Steven F. Meyer v. Town of Wake Forest, Eric Keravuori, Mitzi Franklin, Virginia Jones, Mark Williams, and Roe O'Donnell</u>, No. 5:16-CV-348, filed in the Western Division for the Eastern District of North Carolina ("<u>Meyer</u> case").[1]  Defendants argued that both cases arise from the terminations of employment of both plaintiffs, both of whom were formerly employed by the Town of Wake Forest as inspectors under the supervision of the director of engineering, defendant Keravuori, and both of whom were terminated on October 31, 2014, for allegedly recording their time away from work incorrectly as sick leave.  (DE 29 at 1).  Both plaintiffs allege violations of the FMLA and have filed the same three claims against the same defendants in each case:  1) FMLA retaliation/discrimination; 2) wrongful discharge under the FMLA; and 3) FMLA interference.  (<u>Id.</u> at 1-2 (citing Compl. (DE 5) ¶¶ 66-103; <u>Meyer</u> Compl. (DE 29-1) ¶¶ 77-109)).

Following Rule 16 status conference, the court granted in part and denied in part defendants' motion to consolidate, and the cases were consolidated for the limited purpose of "promoting efficiencies in discovery procedures."  (DE 39 at 2).  Following grant of extension of deadline for completing discovery, the court held another Rule 16 status conference, setting deadline for all dispositive motions in both cases for December 30, 2017, denying defendants' request for continued consolidation, and separating the cases for all purposes going forward including dispositive motions and trial, without prejudice to later renewed motion for consolidation, if warranted.  (DE 50).

On December 30, 2017, plaintiff filed the instant motion for partial summary judgment, arguing the court should grant plaintiff's motion as to plaintiff's claim for interference of his rights

---

[1]  On December 19, 2016, the <u>Meyer</u> case was reassigned to this court for all further proceedings.

under the FMLA.  In support, plaintiff relies upon statement of material facts and depositions of defendants Franklin and Keravuori.

Also on December 30, 2017, defendants filed the instant motion for summary judgment.  In support, defendants rely upon statement of material facts and the following: excerpts from the depositions of plaintiff and defendants Franklin, Jones, Keravuori, and O'Donnell; affidavits from defendants Franklin, Jones, Keravuori, and Williams as well as affidavits from Larry Rochelle, Mickey Rochelle, and Mike Barton, all employees of defendant Town; excerpts from defendants' document production, including defendants' investigative report into the instant matter and personnel policy for FMLA and sick leave, as well as plaintiff's time sheets; plaintiff's responses to defendants' first set of interrogatories and request for production; emails from plaintiff to defendant Keravuori requesting time off; and a map detailing the distances among Wake Forest Town Hall, Universal Healthcare Rehabilitation facility, and the North Carolina fairgrounds.

Plaintiff additionally relies on the following, filed with plaintiff's response in opposition to defendants' motion for summary judgment: plaintiff's job evaluations, defendants' FMLA training document, and articles from the News & Observer concerning the North Carolina fair.

<b>STATEMENT OF THE FACTS</b>

Except as otherwise provided below, the undisputed facts may be summarized as follows.[2]

Plaintiff was employed by defendant Town as a construction inspector from on or about July 2002 until his termination on October 31, 2014.  (DE 53 ¶ 1; DE 68 ¶ 1; DE 55 ¶ 1; DE 64 ¶ 1). Plaintiff was a member of the engineering department and was supervised by the director of engineering, defendant Keravuori.  (DE 55 ¶ 2; DE 64 ¶ 2).

---

[2]  The parties submit facts relevant to both this case and the Meyer case.  Except where otherwise noted, the court focuses on facts relevant to the present case.

As of October 31, 2014, the date of plaintiff's termination, plaintiff had been employed by defendant Town for more than twelve months, and during the twelve-month period immediately preceding plaintiff's termination on October 31, 2014, plaintiff had worked in excess of 1,250 hours for defendant Town. (DE 53 ¶¶ 2-3; DE 68 ¶¶ 2-3). Plaintiff was employed at a worksite at which defendant Town employed 50 or more employees within 75 miles of that worksite. (DE 53 ¶ 4; DE 68 ¶ 4).

Defendant Town is a political sub-division of the State of North Carolina, authorized to do business and is doing business in the State of North Carolina, a public agency as defined in section 3(x) of the Fair Labor Standards Act of 1938, and a covered employer under the FMLA. (DE 53 ¶¶ 6-8; DE 68 ¶¶ 6-8).

1.      Defendant Town's Policies

Plaintiff was provided with a copy of defendant Town's personnel policy, including all relevant updates, which included an at-will employment policy stating, "[t]he employment relationship between the Town and the employee is terminable at the will of either party at any time," and any employee who violates any of the provisions of the policy "shall be subject to appropriate disciplinary action . . . ." (DE 55 ¶ 3; DE 64 ¶ 3).

Defendant Town's sick leave policy states, "[s]ick leave with pay is not a right, which an employee may demand, but a privilege granted for the benefit of an employee when sick," and sick leave may be used "when an employee must care for a member of his or her 'immediate family.'" (DE 55 ¶ 4; DE 64 ¶ 4). The policy also provides that vacation "shall be used for rest and relaxation and may be used for medical purposes." (DE 55 ¶ 4; DE 64 ¶ 4). The policy states, "[s]ick leave is not to be abused," that "[u]sing sick leave under false pretenses is a serious violation of Town

policy and would be grounds for dismissal," and that "[c]laiming sick leave under false pretenses will result in disciplinary action up to and including dismissal." (DE 55 ¶ 4; DE 64 ¶ 4).

Defendant Town's personnel policy also includes a section concerning employees' rights pursuant to the FMLA, and defendant Town has provided training to employees regarding their rights and responsibilities under the FMLA. (DE 55 ¶ 5; DE 64 ¶ 5). Notice of employees' rights and responsibilities is posted on the bulletin board on the first floor of Town Hall. (DE 55 ¶ 6; DE 64 ¶ 6). Defendant Town's policy requires that employees provide 30 days notice if the need for leave is foreseeable and states that failure to provide notice of the need for leave may result in denial of leave. (DE 55 ¶ 6; DE 64 ¶ 6). Defendant Town currently has approximately 235 employees. (DE 55 ¶ 6; DE 64 ¶ 6). Approximately 104 current employees have taken FMLA leave on at least one occasion. (DE 55 ¶ 6; DE 64 ¶ 6).

As stated, defendant Town's sick leave policy permits its employees the use of sick leave to care for immediate family members, including parents, who are ill. (DE 53 ¶ 40; DE 68 ¶ 40). Defendant Town's FMLA policy requires that employees exhaust all accrued sick leave and vacation leave before going on unpaid leave. (DE 53 ¶ 40; DE 68 ¶ 40; DE 63-1 at 7 ("Employees requesting Family Medical Leave are required to exhaust all accrued sick, vacation and compensation leave. Once paid leave is depleted, unpaid leave will commence for the remainder of an employee's Family and Medical leave.")).

Defendant Jones was hired as defendant Town's director of human resources on March 19, 2013, and thereafter held a mandatory one hour Ethics Training, which every employee was required to attend and which plaintiff attended, based on her belief in a need "to more consistently enforce the rules and make better personnel decisions." (DE 55 ¶¶ 7-13; DE 64 ¶¶ 7-13). Defendant Jones

specifically addressed sick leave in the training and stated that time for sick leave may not be used like vacation leave and that it can only be used in the event of illness. (DE 55 ¶12; DE 64 ¶12).

      2.      Plaintiff's Requested Leave in September and October of 2014

In August or September of 2014, plaintiff notified defendant Keravuori that he would need to be out of work periodically because his mother was scheduled to have knee replacement surgery on September 30, 2014. (DE 53 ¶ 25; DE 68 ¶ 25; DE 55 ¶ 14; DE 64 ¶ 14 ). Defendant Keravuori told plaintiff that would be fine and to let him know when he needed to be out; plaintiff did not indicate that he would need to be off a significant amount of time from work or that he would be doing anything other than visiting his mother. (DE 55 ¶ 15; DE 64 ¶ 15).

On September 29, 2014, plaintiff sent defendant Keravuori an e-mail stating, "I will be out of the office at times this week due to my mother having surgery. I will have the town phone with me if you need to reach me." (DE 63-6 at 1; DE 55 ¶ 16; DE 64 ¶ 16). With approval, plaintiff took one day of sick leave on the day of his mother's surgery, but otherwise worked for the remainder of the week. (DE 55 ¶ 16; DE 64 ¶ 16; DE 53 ¶ 27; DE 68 ¶ 27). Plaintiff did not visit his mother every day while she was in the hospital. (DE 55 ¶ 16; DE 64 ¶ 16). Plaintiff assisted in the care of his mother. (DE 53 ¶ 30; DE 68 ¶ 30).

Plaintiff informed defendant Keravuori that his mother would have to be admitted to an inpatient rehabilitation facility in Raleigh, North Carolina following her knee replacement surgery, and plaintiff states his mother was in the facility from October 4, 2014 through October 27, 2014. (DE 53 ¶ 26; DE 68 ¶ 26; DE 55 ¶ 17; DE 64 ¶ 17). Universal Healthcare Rehabilitation Center is located above I-540, south of the Town of Wake Forest, at 5201 Clarks Fork Drive, Raleigh, NC 27616. (DE 55 ¶ 17; DE 64 ¶ 17).

Despite the FMLA notice posted on the bulletin board and the information concerning FMLA in the personnel policy, neither plaintiff nor defendant Keravuori suggested that plaintiff should consult with human resources about whether plaintiff's absence related to his mother's surgery would be covered by FMLA. (DE 55 ¶ 19; DE 64 ¶ 19).

Plaintiff's timesheets show that he took the following additional paid sick time on or after September 30, 2014: four hours on Monday, October 6; four hours on Thursday, October 9; and four hours on Friday, October 17. (DE 55 ¶ 20; DE 64 ¶ 20). Plaintiff also requested permission for a half-day absence on October 21, 2014, via email sent on the same day at 10:22 a.m., and plaintiff's request was approved. ((DE 63-11 at 1; DE 53 ¶ 29; DE 68 ¶ 29; DE 55 ¶ 21; DE 64 ¶ 21).

3.      Plaintiff's Termination

On October 21, 2014, Mickey Rochelle, facilities director, requested a meeting with defendant Franklin, senior human resources consultant, where Mickey Rochelle told Franklin that he felt compelled to speak up regarding his concerns due to the ethics training the he had received. (DE 55 ¶ 22; DE 64 ¶ 22). Defendant Franklin, in her "investigative report," states that Mickey Rochelle informed her plaintiff planned to use sick time for his upcoming visit to the North Carolina State Fair on October 21, 2014, among other allegations. (DE 56-2 at 1-2; <u>see also</u> DE 55 ¶ 24; DE 64 ¶ 24).[3]

Defendant Franklin reported this matter to her supervisor, defendant Jones, and Jones asked Franklin to type a summary of Mickey Rochelle's statement to her and begin an investigation into the allegation. (DE 55 ¶ 25; DE 64 ¶ 25). Defendant Jones shared this with the town manager,

---

[3] Mickey Rochelle's November 21, 2014, summary of the meeting states: "This statement is to confirm I heard Blake Haley discussing attending the fair on 10/21/2014. I spoke to Blake around lunch and he told me that he had to pick his mother up from rehabilitation and that he wouldn't be going to lunch. I didn't attend the fair myself." (DE 63-7 at 2).

defendant Williams, who asked defendant Jones to keep him updated on the investigation because concerns had been expressed in the past regarding plaintiff's attendance. (DE 55 ¶ 25; DE 64 ¶ 25).

Defendant Franklin interviewed Larry Rochelle, Mickey's brother and also a town employee; both brothers frequently had lunch with plaintiff. (DE 55 ¶ 26; DE 64 ¶ 26). Larry Rochelle told defendant Franklin that he saw plaintiff at the fair, among other allegations. (DE 55 ¶ 27; DE 64 ¶ 27; DE 56-8; DE 63-7 at 1).

Plaintiff recorded the October 21, 2014 leave of absence on his time sheet as sick leave, which was turned in on October 28, 2014. (DE 53 ¶ 39; DE 68 ¶ 39; DE 55 ¶ 29; DE 64 ¶ 29). Defendant Keravuori, who was plaintiff's supervisor, was not informed of the issue until after the time sheets were turned in. (DE 55 ¶ 29; DE 64 ¶ 29).

On October 30, 2014, defendant Franklin interviewed plaintiff about the allegations that he had misused time to attend the fair, and plaintiff admitted he had attended the fair and had used sick time. (DE 55 ¶ 30; DE 64 ¶ 30). Plaintiff indicated on his time sheet that he worked for four hours and took four hours of sick leave. (DE 55 ¶ 31; DE 64 ¶ 31).

Defendants Jones and Franklin recommended the termination of plaintiff, with which defendant Kerarouri agreed. (DE 55 ¶¶ 34-35; DE 64 ¶¶ 34-35). A pre-termination hearing was held for plaintiff, conducted by defendants Keravuori, Jones, and Franklin, wherein plaintiff admitted that he left work and went to the fair and stated that he had gone to the fair to buy his mother a sandwich. (DE 55 ¶ 36; DE 64 ¶ 36). Following the hearing, defendants Keravuori, Jones, and Franklin agreed that plaintiff had violated the sick leave policy. (DE 55 ¶ 36; DE 64 ¶ 36).[4]

---

[4] In June 2014, defendant Town terminated another employee for misusing Town time, where that employee traveled to Raleigh to pick up necessary supplies and made an unauthorized 36 minute stop in his vehicle. (DE 55 ¶ 33; DE 64 ¶ 33).

Plaintiff appealed the decision to terminate his employment to the town manager, defendant Williams, pursuant to the grievance provision in the personnel policy, wherein a hearing was held and defendant Williams upheld plaintiff's termination. (DE 55 ¶ 37; DE 64 ¶ 37). On October 31, 2014, defendants terminated plaintiff's employment for claiming sick leave under false pretenses. (DE 53 ¶¶ 45-46; DE 68 ¶¶ 45-46).

## DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Defs. of Wildlife v. N. Carolina Dep't of Transp., 762 F3d 374, 392 (4th Cir. 2014). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249.  In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted).  Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005).  By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.    Analysis

Under the FMLA, "an eligible employee" is "entitled to a total of 12 workweeks of leave during any 12–month period" for family- and health-related reasons, such as "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).  Leave for this reason can be taken intermittently when medically necessary. Id. § 2612(b)(1); see also Dotson v. Pfizer, Inc., 558 F.3d 284, 293 (4th

Cir. 2009) ("employees have an unfettered right to take FMLA leave because of a serious health condition intermittently when 'medically necessary,' with or without employer consent.").

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). Claims for violations of the prescriptive rights set forth in § 2612 are "known as 'interference' or 'entitlement' claims." Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 546 (4th Cir. 2006).

Additionally, the FMLA "contains proscriptive provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." Id. The retaliation provision states that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

Here, plaintiff brings claims for both retaliation and interference. The court first will address the sufficiency of notice provided by plaintiff to defendants regarding his leave taken on October 21, 2014, and then address plaintiff's retaliation and interference claims.[5]

1.      FMLA Notice

The FMLA requires an employee provide "at least verbal notice sufficient to make the employer aware that the employee needs FMLA–qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). "When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or

---

[5]   Although plaintiff states three causes of action for 1) wrongful discharge under the FMLA, 2) FMLA retaliation/discrimination, and 3) FMLA interference, (see Compl. (DE 5) ¶¶ 66-103), these claims substantively are claims for FMLA interference and FMLA retaliation and thus will be analyzed as such.

even mention the FMLA"; however, "[i]n all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." Id.

The Fourth Circuit has stated "[r]egulations promulgated by the Department of Labor 'repeatedly emphasize that it is the employer's responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave.'" Dotson, 558 F.3d at 293 (citation omitted). As stated further by the Fourth Circuit:

> Case law and federal regulations make it clear, however, that employees do not need to invoke the FMLA in order to benefit from its protections. The regulations do not require the employee to "expressly assert rights under the FMLA or even mention the FMLA"; instead, the employee "may only state that leave is needed for an expected birth or adoption, for example." 29 C.F.R. § 825.302(c). After the employee makes such a statement, the responsibility falls on the employer to inquire further about whether the employee is seeking FMLA leave. Id. "In providing notice, the employee need not use any magic words." [Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir.2007)].

Id. at 295.

It is undisputed that plaintiff informed defendant Keravuori that his mother was having surgery, sending an email dated September 29, 2014 stating "I will be out of the office at times this week due to my mother having surgery." (DE 63-6 at 1; DE 55 ¶ 16; DE 64 ¶ 16). Defendants also acknowledge that plaintiff informed Keravuori that his mother would be staying in a rehabilitation center following the surgery. (DE 57 at 15). Additionally, plaintiff informed defendant Keravuori that he "will be out of the office during the mid part of today," on October 21, 2014, the day in question, although the reason for this absence is not stated in this email. (DE 63-11 at 1). Finally, and most significantly, the December 2014 statement made by Keravuori to the Town shortly after plaintiff's termination states:

> Mr. Haley did tell me that his mother had had some sort of surgery. As I recall, it was on her shoulder. He did let me know over the following several days about her recovery. Again, as I recall, there were several days when he had said he was going to leave early in order to drive her to an appointment or follow up rehabilitation.

(DE 56-2 at 55[6]; see also DE 63-16 at 1 (plaintiff's affidavit stating that plaintiff let defendant Keravouri "know in advance about my mom's surgery and rehabilitation and the fact that I would need some time off of work periodically to attend to her needs, and visit her at the hospital and at the rehabilitation center. . . .")).

A reasonable inference from the above evidence is that plaintiff informed defendant Keravouri multiple times that he would be taking time off to care for his mother, both the week of her actual surgery and thereafter while she was in rehabilitation, both via email and in conversation, and then specifically informed defendant Keravouri that he would be absent during the relevant time period during the day on October 21, 2014.[7] Defendants state there is no dispute plaintiff was permitted to take time off to care for his mother both for the surgery and thereafter when she was in the rehabilitation center, but argue that "there is nothing in the record indicating that Plaintiff told his supervisor, Mr. Keravouri, that his absence on October 21, 2014 was in any way related to caring for his mother." (DE 70 at 1-2). However, when taking the facts in light most favorable to plaintiff, a jury could reasonably find that plaintiff provided sufficient notice of his need for FMLA leave on

---

[6] This evidence is inconsistent with affidavit testimony submitted by defendant Keravouri wherein defendant states he "was never aware that Mr. Haley took time off work to be with his mother other than the day of her surgery." (DE 56-14 ¶ 6). Defendants do not address this inconsistency or Keravouri's 2014 statement.

[7] Pursuant to 29 C.F.R. § 825.302(c), after providing such initial notification, "the employer should inquire further of the employee if it is necessary," which it is undisputed did not occur here. (See DE 56-14 at 1 ("I was not aware that Mr. Haley was needed to provide care for his mother during work hours since she was staying in a local rehabilitation facility. Had Mr. Haley told me this, I would have sent him to human resources to fill out FMLA paperwork.")).

the day in question.[8]

2. Retaliation Claim

To succeed on a claim of retaliation, a plaintiff must show "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." Yashenko, 446 F.3d at 551 (citation omitted). Unlike prescriptive entitlement or interference claims, employer intent here is relevant. Sharif, 841 F.3d at 203 (citations omitted).

"Intent can be established either by direct evidence of retaliation or through the familiar burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800–06 (1973)." Id. (citing Laing v. Fed. Exp. Corp., 703 F.3d 713, 717 (4th Cir. 2013); Yashenko, 446 F.3d at 551). Under the McDonnell Douglas framework, a plaintiff must first produce sufficient evidence to establish a prima facie case that the elements of retaliation are satisfied. 411 U.S. at 802. The burden of production then shifts to the employer to rebut the prima facie presumption of retaliation and provide "some legitimate, nondiscriminatory reason" for the adverse employment action. Sharif, 841 F. 3d at 203 (citing McDonnell Douglas, 411 U.S. at 802). If the employer meets this burden, the presumption of retaliation is dissolved and the plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination. Id. (citations omitted). A plaintiff may satisfy this burden by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result

---

[8] Cases cited by defendants in support are inapposite or support the court's holding here. See e.g., Wallace v. FedEx Corp., 764 F.3d 571, 586-87 (6th Cir. 2014) ("By focusing on whether Wallace provided enough documentation for continued leave, FedEx largely misses the point of this notice element. The relevant question is whether Wallace provided FedEx with notice that she needed FMLA leave, not whether she provided notice that she needed a certain amount of FMLA leave . . . . The jury was not unreasonable in concluding that Wallace requested leave extended to her absences on September 3 and 4.").

of retaliation. Id. (citations omitted). In any event, the plaintiff must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation. Id. (citations omitted).

Although defendants argue that plaintiff has failed to put forth a prima facie case of retaliation because plaintiff did not engage in a protected activity as defined by the FMLA, whether or not the FMLA provides protection for the type of care that plaintiff asserts he was providing his mother is a close question.[9] Here, the court assumes arguendo for the purposes of this analysis that plaintiff has put forth a prima facie case of retaliation and turns to the next step under the McDonnell Douglas framework. The burden now shifts to defendants to provide "some legitimate, nondiscriminatory reason" for the adverse employment action. Sharif, 841 F. 3d at 203 (citing McDonnell Douglas, 411 U.S. at 802).

"The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior." Vannoy v. Fed. Reserve Bank of Richmond, 827 F.3d 296, 304–05 (4th Cir. 2016). "[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Laing v. Fed. Exp. Corp., 703 F.3d 713, 722 (4th Cir. 2013) (citation omitted).

---

[9] The applicable regulations explains "care for" as follows:

[A]n employee is needed to care for a family member . . . [when], for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.

29 C.F.R. § 825.124.

Courts utilize the "honest belief rule" to evaluate employers' responses to claims of employment discrimination, under which "[an] employee must present evidence reasonably calling into question the honesty of his employer's belief. . . ." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (citing Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997)); see EEOC v. Sears Roebuck & Co., 243 F.3d 846, 853 (4th Cir. 2001) (holding that plaintiff had put forth sufficient evidence of pretext where the record did not support the employer's contention that the employee's supervisor "honestly believed" that the plaintiff had been investigated for sexual harassment).

To find a genuine dispute of material fact exists regarding whether an apparently legitimate, non-discriminatory reason actually is pretext for discrimination, "it is not enough to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000) (citation omitted).  Proof that "the employer's proffered reason is unpersuasive . . . does not necessarily establish that the plaintiff's proffered reason is correct." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 524 (1993). For example, the "plaintiff must produce evidence that goes beyond that which was necessary to make a prima facie showing by pointing out specific, non-speculative facts which discredit the defendant's non-retaliatory motive." Nguyen v. Austin Quality Foods, Inc., 974 F. Supp. 2d 879, 884-85 (E.D.N.C. 2013) (citation omitted).

Employers are entitled some discretion in making employment decisions.  See DeJarnette, 133 F.3d at 299 ("[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination.") (quotations omitted).  In evaluating opinions regarding termination, "it is the perception of the

decision maker which is relevant, not the self-assessment of the plaintiff." Id. (citation omitted).

Here, defendants have carried their burden by offering a legitimate, nondiscriminatory reason for plaintiff's termination: abuse of leave time under the Town's sick leave policy. It is undisputed that defendant Town's sick leave policy states, "[s]ick leave with pay is not a right, which an employee may demand, but a privilege granted for the benefit of an employee when sick," and sick leave may be used "when an employee must care for a member of his or her 'immediate family.'" (DE 55 ¶ 4; DE 64 ¶ 4). The policy also provides that "[u]sing sick leave under false pretenses is a serious violation of Town policy and would be grounds for dismissal," and that "[c]laiming sick leave under false pretenses will result in disciplinary action up to and including dismissal." (DE 55 ¶ 4; DE 64 ¶ 4). Finally, the policy provides that vacation "shall be used for rest and relaxation and may be used for medical purposes." (DE 55 ¶ 4; DE 64 ¶ 4).

Defendants have put forth evidence that "it was reported to the Town that plaintiff was seen at the fair when he purportedly took sick time to care for his mother" and that plaintiff admitted "attending the fair and that, of the four hours of leave time he recorded, he only spent forty minutes with his mother." (DE 57 at 17). Defendants have consistently maintained that "care for" under the Town's sick leave policy does not include leaving work for four hours, going to the fair to get food, and spending only 40 minutes of those four hours with his mother in the rehabilitation center, even though both defendants Franklin and Keravuori testified that picking up food for a sick family member at a restaurant would be an acceptable practice under the Town sick leave policy. (DE 51-1 at 218; DE 51-2 at 182-83).

Regarding pretext, plaintiff fails to satisfy his burden that this nondiscriminatory explanation for his termination, that he abused leave time, is pretext for FMLA retaliation, offering no evidence

that would indicate defendant's explanation for plaintiff's termination is in any way a fabrication.

Perhaps most importantly in this case, plaintiff has provided no evidence of retaliatory animus towards his allegedly FMLA-protected leave. See Chase v. United States Postal Serv., 843 F.3d 553, 558 (1st Cir. 2016) ("we find that Chase does not have a valid claim for FMLA retaliation because he failed to prove that King acted with retaliatory animus towards his FMLA leave") (citing Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 70 (1st Cir. 2015) (holding that to succeed on an FMLA retaliation claim, a plaintiff "must show that the retaliator knew about [his] protected activity—after all, one cannot have been motivated to retaliate by something he was unaware of.")).

Plaintiff argues that "[p]retext can be inferred from the fact that not one Town witness has been able to point to a single Town policy that was violated." (DE 63 at 27). In support, plaintiff cites E.E.O.C. wherein the Fourth Circuit stated that different justifications at different times for an adverse employment decision is "probative of pretext." 243 F.3d at 852–53. However, as stated above, defendants have not offered different justifications for their decision to terminate plaintiff, maintaining consistently that plaintiff used his sick leave under false pretenses in violation of defendant Town's policy. (See, e.g., DE 56-3 at 141, 206; DE 56-5 ¶ 11; DE 56-11 at 75-78; DE 56-6 at 170-71; DE 56-16 ¶ 7).

Plaintiff also argues that because defendant Franklin knew plaintiff had "plenty of vacation leave available to him" but decided to "let the situation play out" instead of "meeting with Haley and discussing the use of sick leave and vacation leave under the Town's various policies," this indicates Franklin "laid in wait" for over a week and "waited until she had a reason that she could use to justify a termination of his employment." (DE 63 at 26-27; see also id. at 27 ("Franklin could not get past her own preconceived bias and recommended termination because of Haley's use of sick

leave for a purpose she did not agree with.")). This supposition, however, does not support an inference of pretext; instead it supports the opposite inference, that defendant Franklin honestly believed plaintiff planned to and then indeed did use his sick leave inappropriately and thereafter took action in response to this belief.

Plaintiff additionally argues that defendant Franklin "[i]mmediately concluded" plaintiff had violated the Town's sick leave policy when she first heard he had attended the fair from Mickey Rochelle, (DE 63 at 11), without consulting the sick leave policy, (id. at 1). However, defendant Franklin, in response to this information, began an investigation, including reporting the information she had received to her supervisor and the town manager, interviewing Larry Rochelle and plaintiff, and thereafter, in agreement with defendant Jones, recommending the termination of plaintiff. (DE 55 ¶¶ 25-27, 30, 34-25; DE 64 ¶¶ 25-27, 30, 34-25).

Finally, plaintiff argues that the shifting stories of defendants indicate pretext. Regarding defendant Franklin, she and Mickey Rochelle have testified that Frankin's investigation began after Rochelle reported that plaintiff attended the state fair and planned to put sick leave on his time sheet. (DE 56-3 at 115; DE 56-7 ¶ 6; DE 56-9 ¶ 7). Although plaintiff argues otherwise, this is not materially inconsistent with the statement made by Rochelle on November 21, 2014, stating in full as follows:

> This statement is to confirm I heard Blake Haley discussing attending the fair on 10/21/2014. I spoke to Blake around lunch and he told me he had to pick his mother up from rehabilitation and he wouldn't be going to lunch. I didn't attend the fair myself. I have known Steve to come to work late and leave early on multiple occasions. I have no knowledge as to what the reasons were or if they were approved by his supervisor. I do not have access to timesheets for Blake Haley.

(DE 56-9 at 4).[10]

Here, plaintiff has offered no evidence that would allow a factfinder to conclude that defendants' "asserted justification is false." See E.E.O.C., 243 F.3d at 852.[11] Although defendants' leave policy does not define "care" and plaintiff may have engaged in protected activity as defined by the FMLA, plaintiff provides no evidence that defendants did not honestly believe plaintiff had violated defendants' sick leave policy, and because of this violation, terminated him. See Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017) ("Although Capps argues that Mondelez was mistaken in its belief that Capps misused his leave or was otherwise dishonest with regard to the leave taken, there is a lack of evidence indicating that Mondelez did not honestly hold that belief. Accordingly, in light of insufficient evidence for a reasonable factfinder to conclude that Mondelez's legitimate, nondiscriminatory explanation for terminating Capps' employment was a pretext, the District Court properly granted summary judgment on Capps' FMLA retaliation claim."); Medley v. Polk Co., 260 F.3d 1202, 1207 (10th Cir. 2001) ("The law, from a number of authorities at both the federal appellate and district court levels, is, however, uncontradictedly being pronounced that an employer who discharges an employee honestly believing that the employee has abandoned her

---

[10] Defendant Keravuori's story has shifted. (Compare DE 56-14 ¶ 6 (December 29, 2017 affidavit stating defendant Keravuori "was never aware that Mr. Haley took time off work to be with his mother other than the day of her surgery.") and DE 56-2 at 55 (December 17, 2014 statement wherein defendant Keravuori stated plaintiff "did let me know over the following several days about her recovery. Again, as I recall, there were several days when he had said he was going to leave early in order to drive her to an appointment or follow up rehabilitation.")). However, this evidence goes to whether notice of leave was provided by plaintiff to defendants, not whether defendants' offered reason for terminating plaintiff is pretext.

[11] For example, plaintiff is unable to offer evidence concerning any other employee who engaged in similar conduct who was not terminated. Instead the undisputed evidence shows that another employee, when traveling from Wake Forest to Raleigh to obtain parts related to his job duties, made an unrelated stop for 36 minutes while in Raleigh, was thereafter untruthful about the stop, and was thereafter terminated. See Dotson v. Pfizer, Inc., 558 F.3d 284, 297 (4th Cir. 2009) ("Even if the conduct was not precisely analogous, of the five persons involved directly or tangentially in mishandling starters, one was fired and the other four were not disciplined at all. That fact, taken in combination with other Pfizer employees' confusion over the company's starter policies and the timing of Dotson's firing, could lead a reasonable jury to find that Dotson's firing under these circumstances was pretextual.").

job and is otherwise not using FMLA leave for its here 'intended purpose', to care for a parent, would not be in violation of FMLA, even if its conclusion is mistaken, since this would not be a discriminatory firing.").

Accordingly, defendants' motion for summary judgment as to plaintiff's claim of FMLA retaliation is granted.

3.    Interference Claim

To state a claim of interference with a prescriptive right under the FMLA, a covered employee must establish "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 427 (4th Cir. 2015) (citations omitted).[12]  Unlike a retaliation claim, employer intent is not relevant in assessing an interference claim.  Sharif, 841 F.3d at 203 (citations omitted).

Additionally, "[a]n FMLA notice violation can be an actionable interference claim for which an employee may recover, so long as he makes a showing of prejudice flowing from the violation." Vannoy, 827 F.3d at 301–02 (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (holding employee must "ha[ve] been prejudiced by the violation" to obtain relief)). Regarding notice requirements, the FMLA requires that employers provide an individual, written notice to affected employees that an absence qualifies under the FMLA.  See 29 C.F.R. § 825.300. There are two types of individualized notice that the employer must give an employee who may be entitled to FMLA leave: a "rights and responsibilities notice," id. § 825.300(c); and a "designation notice," id. § 825.300(d).  As stated by the Fourth Circuit, "[t]he purpose of the employer notice requirements 'is to ensure that employers allow their employees to make informed decisions about

---

[12]  The parties do not dispute that plaintiff is an "eligible employee" under the FMLA.  (See DE 63 at 15).

leave.'" Vannoy, 827 F. 3d at 301 (citation omitted).

        a.       FMLA Notice Violation

Here, defendants interfered with plaintiff's FMLA rights by failing to recognize his requested leave as a FMLA-qualifying event and thereafter providing the proper notifications to plaintiff. Taking facts in light most favorable to plaintiff, plaintiff provided defendants with sufficient notice of his need for FMLA leave. However, defendant Keravuori stated he did not recognize plaintiff's mother's surgery as a possible FMLA-qualifying event, and defendant Franklin testified that she should have been informed about plaintiff's need for leave or plaintiff should have been directed to contact the human resources department. (DE 51-2 at 210-11; DE 51-1 at 73-75).

Once an employee provides an employer with sufficient notice, an employer is required to provide notice of rights and responsibility. See 29 C.F.R. § 825.300. As relevant to the present dispute, the following information must be provided to the employee by the employer:

> (c) Rights and responsibilities notice.
>> (1) Employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations . . . . Such specific notice must include, as appropriate: . . . .
>>> (iii) The employee's right to substitute paid leave, whether the employer will require the substitution of paid leave, the conditions related to any substitution, and the employee's entitlement to take unpaid FMLA leave if the employee does not meet the conditions for paid leave . . . .
>> (6) A prototype notice of rights and responsibilities may be obtained from local offices of the Wage and Hour Division or from the Internet at www.dol.gov/whd. Employers may adapt the prototype notice as appropriate to meet these notice requirements . . . .

Id. § 825.300(c).

Turning to the prototype notice of rights and responsibilities referenced in 29 C.F.R. § 825.300(c)(6), the prototype notice includes the following with blanks to be either be checked if they

apply or left blank if they do not apply:

> If your leave does qualify as FMLA leave you will have the following responsibilities while on FMLA leave (only checked blanks apply): . . .____ You will be required to use your available paid _____ sick, _____ vacation, and/or _____other leave during your FMLA absence. This means that you will receive your paid leave and the leave will also be considered protected FMLA leave and counted against your FMLA leave entitlement.

United States Department of Labor, Wage and Hour Division, WH-381: FMLA Notice of Eligibility and Rights & Responsibilities, rev. Feb. 2013, https://www.dol.gov/whd/forms/index.htm [https://perma.cc/7XZN-UY4F]; see also Pellegrino v. Commc'ns Workers of Am., 478 F. App'x 742, 746 (3d Cir. 2012) ("The Department of Labor provides Form WH–381, which she received, as a standard notice that satisfies the regulation's requirements").

Additionally, an employer is required to provide a designation notice:

> (d) Designation notice.
> > (1) The employer is responsible in all circumstances for designating leave as FMLA–qualifying, and for giving notice of the designation to the employee as provided in this section . . . . If the employer requires paid leave to be substituted for unpaid FMLA leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, the employer must inform the employee of this designation at the time of designating the FMLA leave . . . .
> > (4) The designation notice must be in writing. A prototype designation notice may be obtained from local offices of the Wage and Hour Division or from the Internet at www.dol.gov/whd. If the leave is not designated as FMLA leave because it does not meet the requirements of the Act, the notice to the employee that the leave is not designated as FMLA leave may be in the form of a simple written statement.

Id. § 825.300(d).

Turning to the prototype designation noticed referenced in 29 C.F.R. § 825.300(d)(4), the prototype notice includes the following to be checked if applicable: "___ We are requiring you to substitute or use paid leave during your FMLA leave." United States Department of Labor, Wage

and Hour Division, WH-382: FMLA Designation Notice, rev. Jan. 2009, https://www.dol.gov/whd/forms/index.htm [https://perma.cc/7XZN-UY4F].

Taking facts in light most favorable to plaintiff, here, defendants failed to treat plaintiff's leave as FMLA protected and did not provide any of the required FMLA notices; therefore, defendants denied plaintiff benefits he was entitled to under the FMLA.[13]

        b.      Prejudice Stemming from Lack of Notice

Although plaintiff did not receive proper notice, plaintiff's interference claim fails because he cannot prove prejudice stemming from lack of notice.

Had defendants provided proper notice, for example providing plaintiff with forms WH-381 or WH-382 and checking the boxes for both sick and vacation leave in the former and checking the box notifying plaintiff substitute or paid leave must be used in the latter, this would have been consistent with defendants' personnel policy. (See DE 63-1 at 7 ("Employees requesting Family Medical Leave are required to exhaust all accrued sick, vacation and compensation leave. Once paid leave is depleted, unpaid leave will commence for the remainder of an employee's Family and Medical leave.")). Defendants would have therefore provided plaintiff with the same information previously provided to plaintiff in defendants' personal policy, (see DE 55 ¶ 3; DE 64 ¶ 3 (parties agreeing undisputed that plaintiff was provided with a copy of defendant Town's personnel policy)), and it is not reasonable to infer plaintiff would have taken vacation instead of sick leave based on information plaintiff already had.

Plaintiff disagrees, arguing had his "leave been properly designated and had he received

---

[13] Plaintiff additionally asserts he took two days off for surgery in May 2014 which were also not properly designated as FMLA leave, which defendants contest. (See DE 70 at 8). This issue is not properly before the court and thus the court need not address it.

proper notice from the Town that the substitution of paid sick leave under the FMLA must also be consistent with the use of sick leave under the Town's sick leave policy, it is reasonable to infer that Haley would have structured his leave differently by taking vacation instead of sick leave on October 21, 2014" in that plaintiff had a significant amount of vacation available to him and that he offered to switch his challenged use of sick leave to vacation leave as soon as he was confronted by the Town over his alleged misuse of leave. (DE 63 at 21-22; see id. at 21 ("Presumably, since the Town's FMLA policy requires that employees exhaust both sick leave and vacation leave and is silent as to which should be substituted first, [proper notice] would have set forth any conditions precedent that must be satisfied before using one form of paid leave over another.)); see also Vannoy, 827 F.3d at 302 ("Prejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA rights, he would have structured his leave differently.").

First, plaintiff overestimates what information defendants were required to supply to plaintiff in their FMLA notices. As stated above, form WH-381 provides an example of the information necessary to supply to plaintiff and in that form, an employer may indicate, consistent with defendants' personnel policy here, that plaintiff must exhaust all paid leave, either vacation time, sick time, or both, prior to use of unpaid leave. Second, plaintiff conflates notice regarding his FMLA rights, which defendants were required to provide, with notice regarding defendants' sick-leave policy, which the FMLA does not mandate defendants' provide. See Pellegrino, 478 F. App'x at 746 (on summary judgment, holding no interference to plaintiff's FMLA rights where plaintiff was on FMLA leave , was terminated, and alleged she was not informed of the travel restriction found in employer's sick leave policy, stating "Pellegrino did, however, receive a notice of her

obligations under the FMLA . . . .   Those requirements, which the regulation enumerates, are specific to the FMLA . . . .   It and its regulations are silent as to what, if any, notice an employee must receive about corporate paid sick leave policies.").

Plaintiff additionally argues more generally that "[p]rejudice exists where an employee loses compensation or benefits 'by reason of the violation,'; sustains other monetary losses 'as a direct result of the violation,'; or suffers some loss in employment status remediable through 'appropriate equitable relief,'" and that "a reasonable jury could determine that the denial of Haley's FMLA rights directly resulted in his termination and, had his leave been properly designated and the Town's leave policy properly followed, he would not have been terminated at all." (DE 63 at 21-22 (citing 29 U.S.C. § 2617(a)(1))).

Plaintiff alleges only two ways in which defendants' interfered with his FMLA rights: first that defendants failed to provide proper notice, which the court addresses above, and second that defendants' failed to treat plaintiff's leave as FMLA protected.  Regarding the latter, plaintiff offers no evidence, and the court discerns none, that had defendants treated plaintiff's leave as FMLA protected, plaintiff would not have been terminated.  See Adams, 789 F.3d at 427 (requiring a showing of harm for a FMLA interference claim).[14]

In sum, defendants' motion for summary judgment as to plaintiff's interference claims is granted, and plaintiff's motion for partial summary judgment as to the same claim is denied.[15]

---

[14] The companion case brought by plaintiff's former coworker, the Meyer case, supports this conclusion.  There, defendants approved plaintiff's FMLA leave, and, notwithstanding, plaintiff was terminated for the same reason stated here, improper use of sick leave in violation of the town's sick leave policy.

[15] Given the court's holding above, it is unnecessary to address defendants argument that the FMLA does not provide a cause of action against individual employees or that individual defendants are entitled to qualified immunity.

**CONCLUSION**

For the foregoing reasons, the court DENIES plaintiff's motion for partial summary judgment. (DE 51). The court GRANTS defendants' motion for summary judgment. (DE 54). The clerk is DIRECTED to close the case.

SO ORDERED, this the 28th day of September, 2018.


LOUISE W. FLANAGAN
United States District Judge